## CHURCHILL v. HOWE.

LIENS—TRUSTS—RESULTING TRUST—EQUITY.
>  Where complainant loaned money to defendants, in reliance upon a deposit in escrow of a deed with complainant, who had charge of the collection of the purchase price to be paid for the property conveyed, and defendants, dealing with the grantee direct, obtained the payment to them of nearly all the amount due, which they invested in real property and later traded the place for another, there was no violation of trust shown which would entitle complainant to a lien upon the realty obtained by the defendants; nor did the transaction fall within the exception to section 8837, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 10677), abolishing resulting trusts except in case of violated trust or wrongfully taking title to lands in the name of the agent or trustee.

Appeal from Emmet; Mayne, J. Submitted January 8, 1914. (Docket No. 24.) Decided April 7, 1914.

Bill by Charles L. Churchill against George Howe and Ella Howe for the enforcement of an equitable lien on real property. From a decree for complainant, defendants appeal. Reversed

*A. S. Hinds,* for complainant.

*Halstead & Halstead,* for defendants.

The bill in this case is filed for the purpose of having the sum of $616.55 declared to be a lien upon certain real estate now owned by defendants, as tenants by the entireties, and, in case of nonpayment of said sum, for the sale of said premises. The facts giving rise to the litigation are briefly as follows: Prior to 1908 the two defendants owned a farm in Oceana county which they sold to one John W. Jackson for the sum of $4,000. Some defects appearing in the title, Jackson refused to pay the full purchase price until they were remedied, whereupon the deed was deposited with the complainant in escrow. Mr. Jackson paid various amounts, including a mortgage, aggregating $2,125. On April 21, 1908, there remained unpaid on account of the deed $1,123.25. Prior to this the defendant George Howe wrote several letters to the complainant, complaining about Jackson's delay in paying the balance of the purchase price, and asserting that he was badly in need of money. On April 3, 1908, he wrote as follows:

"I do need some money, as the man that I bought of wants to go west, and is waiting for me to settle. Now, if you can advance me $680, and leave the rest until it's settled, I can get along all right, and not get into any trouble here. I will be very thankful indeed if you will do that."

Again on April 16th, he wrote:

"Some two weeks ago I wrote you for some money at your suggestion. Now, I am very liable to lose what I have put into this place, $750, if I do not get this money from you. The people I bought of are living with me at my expense, and I can't see why my money is held by you, and is not paid. Now, I want to know what to expect from you by return mail. This has been a trouble and expense to me all winter. If you had done as I wanted you to do, and paid Mr. Bell $25 for a quitclaim deed, I would have been money ahead. Now, Mr. Churchill, I have got to have this money right away. I would rather you would pay this $25 to Geo. Bell, and settle the matter up at once."

Following this, and on April 21st, complainant sent to defendant George Howe a draft for $750, which was cashed by defendant on April 27, 1908, and the proceeds thereof paid upon the property he was then purchasing. Later, and on February 17, 1910, defendants traded this land for the land now owned by them described in the bill of complaint upon which it is sought to attach a lien. It is conceded by defendants' counsel that the exchange of properties has no effect upon the rights of complainant; that is, if complainant was entitled to a lien upon the property first purchased, he has the same right as to this property. After receiving the $750 from the complainant, defendant Howe corresponded with Mr. Jackson, personally urging him to pay the amount still due upon the escrow deed directly to him, and on February 2, 1909, Jackson sent his check to the defendant Howe for $900. Instead of reimbursing the complainant out of the moneys received upon said check, defendants appropriated it to their own use. After the $900 was paid, there still remained $133.45 unpaid on the escrow deed. As soon as complainant learned that Jackson had paid this sum directly to the defendants, he sent his attorney to them and demanded a settle-

ment. Although admitting that they owed the amount of money claimed, they declined to secure its repayment by executing a mortgage on the property or otherwise. Complainant thereupon notified Jackson to pay no more money to the defendants, and he did pay the $133.45 to the complainant, thus reducing the $750 loan to $616.55, the amount for which the lien is claimed. Insolvency of the defendants is charged in the bill. Defendants caused their appearance to be entered in the proceeding; but neither answered nor demurred. After a hearing in open court, in the course of which the facts as set out in the bill were proven by the complainant, the court below entered a decree declaring the said sum to be a lien upon the lands described in the bill, and now owned and occupied by the defendants, ordering repayment, and, in default thereof, the sale of the property. From this decree, defendants appeal.

BROOKE, J. *(after stating the facts)*. It is the claim of counsel for the appellants that assuming, as we must, the truth of all the allegations contained in the bill of complaint, no case is here made out for equitable relief. Uses and trusts are abolished by section 8829, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 10669), except as they are saved by statutory enactment. Section 8837 provides that section 8835 shall not extend to cases where the alienee named in the conveyance (1) shall have taken the same as an absolute conveyance in his own name, without the knowledge or consent of the person paying the consideration, or (2) when such alienee, in violation of some trust, shall have purchased the lands so conveyed, with money belonging to another person. The claim of the complainant is that this case falls within the terms of the exception stated in the latter part of section 8837 (4 How. Stat. [2d Ed.] § 10677) ; that is, that the defendants in this case in violation of some trust pur-

chased the lands described in the bill of complaint, or at least those which were exchanged for said lands. We find ourselves unable to agree with complainant's position. It would seem to be quite obvious that the title to the land first purchased was taken in the names of the defendants with the knowledge of the complainant, for the letters indicate that the $750 was advanced for the purpose of aiding defendants to complete the purchase of those lands.

We are unable to discern under the admitted statement of facts any trust violated by the defendants in the purchase of the first lands. The money was advanced by the complainant to the defendants for that purpose. It is true that complainant believed that in advancing said money he would be able to reimburse himself from the moneys to be paid by Jackson on the escrow deed. He, however, made no conditions with the defendants when the money was paid over to them, and in using it as they did, and acquiring the title to the property in question in their own names, they certainly violated no trust. It is not apparent nor inferable from their acts that at that time they even entertained a disposition to defraud the complainant. Their fraudulent conduct commenced when later, through correspondence, they induced Jackson to pay the $900 directly to them, disregarding their obligation to the bank. While their conduct in the premises is concededly dishonest, disreputable, and fraudulent, we are of opinion that under the admitted facts they violated no trust and committed no fraud at the time the purchase of the lands was made. *Thompson* v. *Marley*, 102 Mich. 476 (60 N. W. 976); *Wheeler* v. *Reynolds*, 66 N. Y. 227.

The decree of the court below will be reversed and the bill of complaint dismissed, but without costs.

MCALVAY, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.