No. 35,154

S. S. Alexander, *Appellant*, v. T. M. Flick, *Appellee* and *Cross-appellant*.

(119 P. 2d 464)

Opinion filed December 6, 1941.

*Austin M. Cowan*, of Wichita, *J. N. Tincher*, of Hutchinson, and *George L. Hay*, of Kingman, for the appellant.

*Paul R. Wunsch, Charles C. Calkin* and *H. E. Walter*, all of Kingman, for the appellee.

The opinion of the court was delivered by

Smith, J.: This was an action by one member of a law partnership for an accounting, and in a second cause of action, to enforce a provision in the partnership contract whereby a partner had agreed not to practice law in the county where the partnership was located for ten years after a dissolution of the partnership. Judgment was for the defendant, denying the injunctive relief, and for the plaintiff as to the accounting. The plaintiff appeals from so much of the judgment as denied the injunction and from certain phases of the accounting. The defendant cross-appeals from the judgment of the court as to the accounting.

The partnership had been in existence for a little over four years. It was finally dissolved when the defendant served notice of his intention to dissolve it. The petition alleged this and set out in the cause of action, asking for the accounting, the contract between the parties which contained detailed provisions for the conduct of the business.

In the cause of action wherein the injunction was asked, the petition set out the provisions of the contract, which were to the effect that the defendant would not engage in the practice of law in the county or within ten miles of the nearest line of the county for a period of ten years after a dissolution.

The defendant answered, making various allegations in defense of the action, and setting out his theory as to the accounting.

The trial court made findings of fact and conclusions of law and denied the injunction.

Various reasons are assigned by the plaintiff on appeal why this judgment was wrong and why the injunction should have been granted by the trial court.

We have examined the record and have concluded that no reasons appear why the judgment of the trial court should be reversed as to the denial of the injunctive relief.

The plaintiff also appeals from the judgment of the trial court as to certain features of the accounting. Amongst other things, the contract of association provided that the gross proceeds of the office should include all fees received by either party as county attorney or city attorney of any city in the county.

During part of the time that the parties were associated the defendant was county attorney of Kingman county. The defendant when he received his pay for the time he was county attorney did not pay it into the partnership assets. Plaintiff contends that under the above provisions of the contract he should have done this. The trial court found that the contract provided that the gross proceeds should include fees received by either party as county attorney, but concluded as a matter of law that such provision of the contract was against public policy and void and refused to charge defendant with this when the accounting was made.

Plaintiff argues that this was error.

We have concluded that the pay of an officer is for his benefit to encourage him in the better performance of his duty.

The rule is stated in 22 R. C. L. 541 as follows:

"The emoluments of a public office are not considered the proper subject of barter and sale, and public policy in particular prohibits the assignment of unearned salaries or fees."

Note, also, 22 R. C. L. 524, which reads:

"Such salary as may be attached to any office is not given to the incumbent because of any duty on the part of the public to confer emoluments on him, but to enable him the better to perform the duties of the office, for without adequate compensation it cannot be expected that he will be able to give due attention to his official duties."

Plaintiff argues that the county attorney's salary was only incidental to the general proposition of practicing law by the partners and that it was proper to consider the salary the defendant should receive as county attorney since he would use time that might have been devoted to the partnership, and the partnership office library for carrying on the duties of his office. We are aware that there are some authorities to that effect. We prefer the rule, however, which is based on the proposition that the people of Kingman county paid the defendant his salary to perform his duties of county attorney and that the salary was fixed at that amount because the legislature deemed such a salary necessary to secure the service of a lawyer competent to carry on those duties. The court was correct in its conclusion that the provision requiring that this salary should be part of the gross proceeds of the office was contrary to public policy and in refusing to consider that item in making the accounting.

The partnership had received an equity in a farm as a fee. At the time this accounting was had the partners were tenants in common of this farm and each paid one-half the interest on the mortgage, and paid one-half of the taxes and took half of the proceeds. The plaintiff asked the court to place a lien on it for the amount the trial court found was due the plaintiff from defendant and to order it sold and the proceeds applied to the payment of this lien. The trial court took the position that ownership in it was personal business between the two partners and that its character as a partnership asset had been settled when they became tenants in common.

Plaintiff complains of this conclusion. We have concluded that the trial court was correct.

The defendant has filed a cross-appeal from the refusal of the trial court to make certain findings of fact with reference to the accounting.

There were about half a dozen groups of items involved in the accounting. The defendant asked the trial court to make a general

finding as to how much the plaintiff was indebted to the defendant and also requested it to make specific findings as to these different groups of items. The trial court made no specific findings but made a general finding to the effect that the defendant was indebted to the plaintiff in the sum of $100 on a promissory note, about which there was no dispute, and that the defendant had received $497.26 in excess of the amount to which he was entitled according to the terms of the contract.

The contract provided that commencing with January 1, 1935, the defendant was to receive a monthly drawing account of $80 per month and that inclusive of such drawing account he was to receive in 1935 thirty-three and one-third percent of the net proceeds of the income of the fees and after 1935 forty percent of such net proceeds and that during 1935 he was to receive $80 per month irrespective of whether it was in excess of thirty-three and one-third percent.

The trial court in calculating the amount that the defendant was overdrawn from the partnership held that he was not entitled to receive this drawing account over and above the percentage mentioned. The defendant requested a finding to the effect that this drawing account was to be charged as an office expense and to be deducted before arriving at the net return of the business. The defendant argues that the court's failure to make this finding was error.

The contract also provided that the gross proceeds of the office should include all fees collected in cash and what items should be included in the expenses of the partnership in detail, naming rent, light, heat, water, stenographer, janitor, telephones and telegrams, office stationery and supplies, postage and post-office box rent, repairs on typewriter, subscription to county newspaper, state bar association dues, chamber of commerce dues, insurance and taxes on library and office fixtures, redecorations and repairs of office, additions to office equipment, furniture, and fixtures, and such general incidental expenses usual and necessary and proper in maintaining the office.

It next provided that from the gross receipts the expense items should be deducted and the resulting figure would be the net proceeds of the office, that the proceeds should be determined at the close of the year and that from the net proceeds of the office so determined the defendant should receive the percent specified in the contract, which we have seen for 1936, 1938 and 1939 was specified as forty percent, and that there should be deducted from the percent which he should receive the amount that he had received on his drawing account.

The parties adopted a plan of preparing an inventory of the business of the office shortly after the close of each year. This was done for 1936, 1937 and 1938. There is no dispute between the parties as to the settlement that was made for the business of 1935.

The trial court held that the accounting should be had according to the provisions of the contract. The result of this was that while defendant had received $80 a month during 1936, 1937 and 1938 and part of 1939, when this accounting was had this amount was charged against him, with the result that he was held to have drawn more than he was entitled to.

For the purpose of this opinion we shall present the details of the inventory for 1936. That inventory recited that the fees for the year were $3,274.80; that the total expenditures for the year were $2,287.15. This total included an item of the drawing account of defendant at $80 a month, which for the year amounted to $960. After an item for law books was deducted a net profit of $915.60 was noted. The inventory then contained under the head "dividends" a payment to the plaintiff of $500 and to the defendant of $600.

All parties are agreed that the defendant later repaid this $100 discrepancy, so that there was a settlement between the partners by which each took $500. In this inventory the defendant's drawing account was listed as an item of expense. That was the way the business of the partnership was settled for the years 1936, 1937 and 1938. It was sworn to by the defendant, and plaintiff testified that it was accepted as a statement of the business for that year.

If the business had been settled for that year according to the terms of the contract the gross proceeds would have been $3,277.80. The gross expenses would have been $1,327.15. The net proceeds would have been $1,499.65. The defendant would have been entitled to forty percent of this, which would have been $777.86, or $182.14 less than his drawing account, and for that year he would have received that much more than he was entitled to under the contract.

As has been demonstrated, however, the parties did not follow that way of accounting, but followed a plan whereby defendant received his $80 a month or $960 for the year and $500 or fifty percent of the net proceeds.

The defendant testified that the contract was changed early in 1936 by an oral agreement whereby he was to receive his $80 drawing account and fifty percent of the net proceeds.

The plaintiff denied any change was made.

The trial court found that the contract was changed so each should

receive fifty percent but refused to find that it was changed as to the method of accounting. Regardless of that, all parties admit that the method of accounting provided for in the contract was never followed in a single instance during the time that this partnership was in existence, but a method such as we have described for 1936 was followed for 1936, 1937 and 1938. The question is, should the contract have been followed, or should the method of accounting that was actually used have been followed?

The rule is stated in 6 Williston on Contracts, p. 5171, as follows:

"The agreement to rescind or modify need not be express. Mutual assent to abandon a contract, like mutual assent to form one, may be inferred from the attendant circumstances and conduct of the parties."

See, also, Restatement, Contracts, 406 *Comment b.*

In *Hobbs v. Columbia Falls Brick Co.*, 157 Mass. 109, 31 N. E. 756, the court said:

"We think that, upon the facts which were agreed, and upon those which appeared in evidence from the testimony of its president and treasurer, the defendant was entitled to go to the jury on the question whether there had been an abandonment of the contract by the plaintiffs and their assignees, which was assented to by the defendant." (p. 111.)

To the same effect is *Eddy v. St. Charles Land Co.*, 271 Fed. 254, also *Chouteau v. Jupiter Iron Works*, 94 Mo. 388, 7 S. W. 467, where the court said:

"There can be no doubt that a written contract may be rescinded or abandoned by parol. It is not necessary to show an express agreement to that effect, but the agreement to rescind may be inferred from the acts and declarations of the parties." (p. 395.)

Applying that rule to the facts in this case, it is clear that the parties actually modified the contract as far as the accounting features were concerned. Courts should be slow to hold that written contracts have been modified by acts of the parties, but here there is no dispute as to what the parties did for 1936, 1937 and 1938. The modification was made to their mutual satisfaction. We hold that the trial court should have followed the method of accounting that was followed by the parties, rather than that provided for in the contract.

This brings us up to September 13, 1939, the time when the firm was dissolved. Following the method of accounting that was followed by the parties for the three previous years, the office expenses for the year up to that time were $1,777.84. The gross cash earnings were $3,922.59. This made the net cash earnings $2,144.75.

Defendant would be entitled to fifty percent of this, or $1,073.87. It is conceded by both parties that plaintiff took into his possession when the firm was dissolved the bank account of the firm, which amounted to approximately that amount.

There are some other groups of items, concerning which the defendant requested findings, which were refused by the trial court. He argues on his cross-appeal that this refusal was error. We have sent for the original transcript and exhibits in order that we might examine the record closely on these points. We find that the evidence is such that we cannot say the trial court was compelled to make such findings.

The judgment of the trial court denying the injunction and that holding that the provision that the salary of the defendant as county attorney was against public policy is affirmed; the judgment of the trial court giving plaintiff judgment for $497.26 is reversed with directions to enter judgment for defendant in the amount of $1,073.87.