CHRIST LEHRLING, *revived in the name of Emelie Lehrling, as Administratrix, etc., Appellee,* V. EMIL A. LEHRLING *et al., Appellants.*

No. 17,067.

### SYLLABUS BY THE COURT.

DEEDS—*Warranty—Resulting Trust—Quieting Title.* The owner of a farm was pressed by litigation upon a liability requiring immediate attention. His children, in whose care he had left the farm, negotiated a settlement of this claim and by letter advised their father, who was then in Germany, to convey the farm to them in order that they might, as stated in their letter, borrow the money necessary to make the settlement upon a mortgage to be given by them upon the land. He approved the settlement, executed the deed they had sent to him, and returned it to the grantees, who thereupon borrowed the necessary money, gave their note therefor with a mortgage upon the land to secure its payment, and used the money as they had proposed in payment of the claim referred to, and necessary expenses. The father then returned to his home, resumed possession of the farm, and paid all expenses and indebtedness incurred by his children in the matter in full. About fifteen years after resuming possession of the land, he commenced this action against his sons and daughter, grantees in the deed, to quiet his title to the farm; they pleaded ownership of the land in fee simple under the deed referred to, subject only to the use thereof by their father during his lifetime. It is *held,* that the action to quiet title may be maintained; that the grantees in the deed took the legal title in trust, arising by implication of law from the facts stated, to raise the money required, for their father's use, and that the purposes of the trust having been accomplished, the mortgage satisfied, and all expenses paid, the father is entitled to a decree quieting his title.

Appeal from McPherson district court. Opinion filed May 6, 1911. Affirmed.

*G. F. Grattan,* and *J. M. Grattan,* for the appellants.
*Frank O. Johnson,* and *P. J. Galle,* for the appellee.

The opinion of the court was delivered by

BENSON, J.:    This action was brought by Christ Lehrling to quiet title.    In August, 1892, he was living upon the land in controversy with his second wife. About that time he left hurriedly for Germany in anticipation of divorce proceedings, leaving the farm and personal property thereon in the care of his three sons. The sons and a daughter were children of a former wife and were adults.   Soon after he left this country his wife commenced an action of divorce, and his son Carl, then living upon the farm, was appointed receiver of his property in the divorce action.   Negotiations followed between the sons and their stepmother resulting in a proposition by her to accept $1800 and the payment of costs and attorney's fees in settlement of her claim for alimony.   The children communicated this offer to their father in a letter, signed by all of them, in which they advised him to accept the proposition and enclosed a deed duly prepared for him to execute to convey the land to them in order that they might borrow the sum of $1800 upon it by mortgage, which they proposed to do, and to use the proceeds, together with money from the sale of wheat then upon the farm, to pay the claim of their stepmother and the expenses and some other debts.   The letter referred to the expenses of litigation and the importance of immediate action, asking him to execute and return the deed as soon as possible if he approved the settlement.   On receipt of this letter, he executed the deed as requested and returned it to one of his sons.   It was in form a warranty deed, reciting a consideration of $4000, purporting to convey the farm to his sons and daughter. It was then executed by his wife and placed upon record. The young people then borrowed the sum of $1800 and gave their promissory note, together with a mortgage upon the land, as security, and paid the money over to their stepmother.   Later the divorce was granted

and the settlement of the property rights was approved. The farm was cultivated by the sons, the wheat marketed, expenses and debts paid, and some remittances made to the father for his expenses. In April, 1893, Christ Lehrling returned to his home, resumed possession of the farm, and leased a part of it to his son Carl. He was afterward married to the appellee, Emilie Lehrling, and continued in the open and exclusive possession of the land until his death, which occurred after the trial in the district court. The facts stated thus far are undisputed. The appellants testified that at the time of leaving home their father told them to take the property and do the best they could with it, and that they said "all right, we will keep you as long as you live. You will not have to suffer as long as we have got anything." This was denied by Christ Lehrling, although he testified that they were to take care of the property.

The answer pleaded that the appellants were the owners of the land under the deed referred to, subject to the use thereof by the father during his natural life. He paid the mortgage, taxes and all expenses after his return, except what had been previously paid out of the proceeds of his property.

The reply consisted of a general denial, and in substance alleged that the deed was made upon the agreement that the grantees therein should obtain a loan upon the land to pay alimony to the grantor, and that they would reconvey the land subject to the mortgage to be given to secure the loan. It was also alleged that there was no other consideration given for the deed except the agreement as stated.

The court found the facts in substance and effect as above stated, and also found that none of the appellants paid or promised to pay anything for the conveyance and that they did not agree to support and maintain their father as a consideration therefor, but in taking the deed and making the mortgage acted as

Lehrling v. Lehrling.

his representative and agent, and concluded as matter of law that the appellee was entitled to the relief prayed for and that the deed should be canceled.

Numerous assignments of error are presented, many of which relate to the admission of testimony, which are unimportant because there is no dispute concerning the material facts except as to the conversation or understanding respecting the property just before Mr. Lehrling departed for Germany, and the objections presented do not affect the evidence or findings upon that matter. The purposes of the parties in executing and taking the deed sufficiently appear from the letter referred to and there is no substantial conflict of evidence concerning any material transaction afterward.

While the deed is sufficient to show title in the grantees in the first instance, it is apparent from the letter, which is too long to be inserted here, that it was made to facilitate the loan to meet the emergency referred to therein. Had Christ Lehrling made a deed direct to the mortgagee to secure the loan, it would have been treated, under well-recognized principles of equity, as a mortgage. The intervention of third parties was manifestly for convenience and to save time. The father was in Germany, and the children were at home where the business must be done. The plan did not seem unreasonable. Expenses would necessarily accumulate if there should be delay in executing the mortgage and procuring the loan. The father was in trouble, far from home, and naturally desired to save as much of his property as possible after satisfying the proper claims of his wife; the necessity of speedy action was apparent and was emphasized in the letter. He acted promptly, as his children requested, and in the confidence that a father may be presumed to have in his children, and this ought not to operate to his loss. While the court did not find that he had demanded a reconveyance before bringing the suit, the fact that

49—84 KAN.

the appellants when sued set up an adverse claim is sufficient to show his right of action. (Civ. Code, § 618; *Neve v. Allen,* 55 Kan. 638.) Claiming to own the land absolutely, as they do, it must be presumed that any such demand would have been in vain. (*C. K. & W. Rld. Co. v. Comm'rs of Chase Co.,* 49 Kan. 399.)

The appellants rely upon the provisions of the statute requiring that express trusts shall be shown by writing, and insist that the letter is insufficient to meet the statutory requirements. The letter and deed however, in connection with all the circumstances, are sufficient to show a trust by implication of law. The appellants having asked for the conveyance for the purposes stated in their letter, and their request having been complied with, a trust may fairly be implied to hold the legal title for the purposes named. A trust arising by implication of law is excepted from the statutory rule requiring a writing signed by the party creating a trust. (Gen. Stat. 1868, ch. 114, § 1, Gen. Stat. 1909, § 9694.)

"Implied trusts are those that arise when trusts are not directly or expressly declared in terms, but the courts, from the whole transaction and the words used, *imply* or infer that it was the intention of the parties to create a trust. Courts seek for the intention of the parties, however informal or obscure the language may be; and if a trust can fairly be implied from the language used as the intention of the parties, the intention will be executed through the medium of a trust." (1 Perry, Trusts, 6th ed., § 112.)

Trusts are often declared in transactions between persons standing in confidential relations, as parent and child, that would not be implied between strangers. (*Koefoed v. Thompson,* 73 Neb. 128; *De Mallagh v. De Mallagh,* 77 Cal. 126; 115 Am. St. Rep. 793, note.)

"Where one sustaining such relation makes use of it to promote his own interests, even though a charge of fraud could not be sustained, a trust by implication of law will be decreed." (1 Beach, Trusts, § 105.)

Trusts may be raised in equity in respect to property which has been acquired by fraud, or when though acquired originally without fraud it is against equity that it should be retained. (2 Washburn, Real Prop., 6th ed., § 1430.)

"When a person through the influence of a confidential relation acquires title to property, or obtains an advantage which he can not conscientiously retain, the court, to prevent the abuse of confidence, will grant relief. . . . The principle, that when one uses a confidential relation to acquire an advantage which he ought not in equity and good conscience to retain the court will convert him into a trustee, and compel him to restore what he has unjustly acquired, or seeks unjustly to retain, has frequently been applied to transactions within the statute of frauds. The rule governing dealings between persons standing in fiduciary relations is applicable to parent and child, and courts carefully scrutinize them, to protect the latter against any undue advantage being taken by the former. (*Archer v. Hudson,* 7 Beav. 551; *Hoghton v. Hoghton,* 15 Beav. 278; *Wright v. Vanderplank,* 8 DeG., M. & G. 133.) The trust sought to be enforced in this case does not arise exclusively from the agreement, but from the agreement in connection with the other circumstances, the interest of the plaintiff in the land, the confidential relation of the parties, the youth and inexperience of the plaintiff, the fact that he acted without independent advice, and the injustice which would result in case the agreement should not be enforced." (*Wood v. Rabe et al.,* 96 N. Y. 414, 425, 426.)

In the case from which the above quotation is taken the mother was held to be a trustee for her son, in respect to property to which she had acquired the legal title for his benefit. The opinion has been cited in numerous decisions and textbooks and states principles of the clearest equity. It seems unnecessary to cite further authorities. The purposes for which the conveyance was made having been accomplished, the securities upon which the appellants were liable having been satisfied, and all expenses paid, the appellants

had no further right to hold the legal title. Having set up in their answer an adverse interest by claiming title in fee, the judgment against them was proper, and is affirmed.