In re Myrleen Marie ANGUS, Debtor.

TRAVELERS INSURANCE
COMPANY, Plaintiff,

v.

Myrleen Marie ANGUS and Jerome B.
Shank, Defendants.

Bankruptcy No. 380–01412.
Adv. No. 80–0261.

United States Bankruptcy Court,
D. Oregon.

March 6, 1981.

Roger K. Stroup, Portland, Or., for plaintiff.

Ronald L. Miller, Astoria, Or., for defendant.

## MEMORANDUM OPINION

FOLGER JOHNSON, Bankruptcy Judge.

Defendant Myrleen Marie Angus had taken out a personal articles insurance policy with plaintiff which covered, among other things, a man's gold and diamond ring which defendant valued at $7,000.00. On or about the evening of February 19, 1980, defendant went out with a friend permitting him to wear the ring. At the conclusion of the evening it was discovered that the ring was missing and was presumed lost or stolen.

Plaintiff made an investigation, uncovered no evidence of fraud, and on May 2 paid defendant Angus $5,689.00, which amount had somehow been determined by plaintiff's appraiser to be the value of the ring.

On June 17 Angus filed bankruptcy. Plaintiff was not listed as a creditor, and neither party then believed any debtor-creditor relationship existed. About two months later Angus discovered the ring in her home under a piece of furniture and advised the police to cease looking for the property which had been reported stolen. The police in turn advised the insurance company which tried to contact Angus without success until it received an amended bankruptcy schedule in September adding plaintiff as a creditor.

The property supervisor of plaintiff admitted that there was no provision in the insurance policy stating that title or right to insured property passed to the company upon payment of a claim for its loss. He said that when articles are recovered it is the practice of the company to offer them back to the insured for the same amount the company had paid. If the insured declines, the articles are sold for their salvage value. Should they bring more than the amount paid the insured, the excess is given the insured.

Defendant Jerome B. Shank, trustee of the debtor's estate in the bankruptcy, is asserting no claim to the ring on the ground that even if it belongs to Angus, she has no homestead and could use the equivalent amount under 11 U.S.C. § 522(d)(5) to claim the ring exempt.

Plaintiff claims that it acquired title to the ring upon payment of the money in spite of policy silence on this subject. It also attempts to reach it through subrogation even though no third party is involved. Then there is the general equitable argument of unjust enrichment. Plaintiff seeks only the ring and not a return of the money paid.

Defendant agrees that if the ring had been discovered prior to bankruptcy, plaintiff would have been entitled to either the ring or the money. In most reported cases the insurance company has not sought the relocated property, even though it may have been tendered by the insured, but has brought suit for return of the money instead. Decisions have generally favored the insurance company under the right of restitution or rescission based on mutual mistake. *Continental Casualty Co. v. Van Deventer*, 277 App.Div. 553, 101 N.Y.S.2d 342 (1950); *Eagle Insurance Co. v. Edgar Sabbeth Plywood and Flooring Corp.*, 73 A.D.2d 607, 422 N.Y.S.2d 443 (1979); *Restatement of Restitution*, Ch 2, § 18.

Defendant then argues that since, under company policy, she could have kept the ring and elected to return the money, the subsequent filing of a bankruptcy would have discharged the money obligation, and that it should make no difference that the ring was not found until after bankruptcy, as the insurance company would have had the right to file a contingent claim to cover the remote possibility of such rediscovery.

While a contingent claim of this nature would not have been provable under the Bankruptcy Act, it could be allowable under the Bankruptcy Code, but if the Court had been required to estimate its value before discovery of the ring, it would have been deemed worthless, thus achieving the same

result as disallowance. It would place an extremely unreasonable burden on debtors, insurance companies and the bankruptcy court if debtors, upon filing bankruptcy, had to list all insurance companies that had paid any claim to them, and if insurers had to keep such records of closed files to be able to identify the insured upon receipt of the bankruptcy notice and file a contingent claim without any real hope of recovery. In asset cases the trustee would have to object to such claim and ask the court to value it.

There is also the argument that title or right to the ring did not pass to plaintiff until it was rediscovered. If that were so it should not avail defendant, as it should follow that the right to restitution should not arise until then, and being a post-bankruptcy debt, would not be dischargeable in this case. The question of title, however, is not the path to a solution. The Uniform Commercial Code has discarded such approach.

■ The doctrine of subrogation normally involves the existence of a third party where the rights of the insured against such third party pass to the insurer upon payment of insured's claim. No third party is involved here as the ring never left the control or constructive possession of Angus, and hence the ring may not be reached through subrogation.

It would be inequitable and a case of unjust enrichment to permit defendant, after spending the money received through a mistake of fact, to keep the ring also. Where no adequate remedy at law exists, the courts achieve justice through finding the existence of a constructive trust or an equitable lien.

■ One instance of where a court will impress a constructive trust is where a person holding title to property is subject to an equitable duty to convey it to another person on the ground that he would be unjustly enriched if he were permitted to retain it. The trust is imposed not because of the intention of the parties, but because the person holding the title to property would

be unjustly enriched if he were permitted to keep the property. To prevent such unjust enrichment an equitable duty to convey the property to another is imposed upon him. *Restatement of the Law, Restitution*, § 160 (1937); *Barnes v. Eastern and Western Lumber Co.*, 205 Or. 553, 595–96, 287 P.2d 929, 948–49 (1955).

Oregon courts have long recognized the doctrine of constructive trust, *see e.g. Barnes*, supra, and *Hughes v. Helzer*, 182 Or. 205, 185 P.2d 537 (1947), as well as the doctrine of equitable liens, which essentially accomplishes the same purpose in this case, *see Oregon Mutual Insurance Co. v. Cornelison*, 214 Or. 501, 330 P.2d 161 (1958).

■ Under the Bankruptcy Act, such constructive trust or equitable lien survived the bankruptcy of the person who owed the duty to convey, and the trustee in bankruptcy took the property of the debtor subject to all such equities impressed upon it. *See Goodnough Mercantile & Stock Co. v. Galloway*, 171 F. 940, 950 (D.Or.1909); *Thompson v. Fairbanks*, 196 U.S. 516, 526, 25 S.Ct. 306, 310, 49 L.Ed. 577 (1904); and *In the Matter of Kennedy & Cohen*, 612 F.2d 963, 6 B.C.D. 128 (5th Cir. 1980). The new Bankruptcy Code does not alter this result.

■ This court concludes that the defendant-debtor, having received payment through a mutual mistake of fact, holds the ring in a constructive trust subject to the equitable rights of the plaintiff-insurance company which has the beneficial interest in such trust, and that plaintiff is therefore entitled to the ring.